IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,          :
                                   :
      Plaintiff,                   :
                                   :         CRIMINAL ACTION
v.                                 :
                                   :         NO. 1:10-CR-0086-RWS-ECS-2
ERNESTO ESCOBAR,                   :
                                   :
      Defendant.                   :

**REPORT & RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

**I.**
**Preliminaries**

This matter is presently before the Court to address two motions: Defendant's motion to suppress statements [Doc. 358] and Defendant's motion to suppress evidence [Doc. 359]. With respect to the motion to suppress statements, Defendant has expressly abandoned this motion. See [Doc. 527].   Accordingly, the undersigned recommends that the motion be **DENIED** as abandoned.

As for the motion to suppress evidence [359], an evidentiary record was made before the Court on March 25, 2011, and the transcript has been filed. [Doc. 522].   The motion has not been abandoned and the matter has been fully briefed. The motion to suppress evidence, therefore, is ready for a report and recommendation.

## II.
## The Motion to Suppress Evidence

### A. Issues and Contentions

Defendant's motion to suppress evidence focuses upon a traffic stop that occurred on June 9, 2008.  The stop led to Defendant's arrest on an outstanding warrant and a search of the vehicle in which he was a passenger at the time.  Evidence in the form of two handguns was seized from a compartment in the vehicle as a result of what the government contends was a consent search.

Defendant contends that the driver of the vehicle did not violate any Georgia traffic law and that the officers were mistaken as a matter of law in their belief that what they observed was a violation justifying the stop.  Defendant argues that such a mistake of law cannot provide probable cause to stop a vehicle.  Defendant further argues that without probable cause for the stop, any subsequent search by purported consent would be tainted by the unlawful stop.

The government responds that the officers had probable cause to stop the vehicle in order to arrest Defendant on an outstanding arrest warrant, without regard to justification under the traffic laws.  In addition, the government challenges Defendant's standing to seek to suppress the evidence seized from the search on the grounds that Defendant was a mere passenger with no possessory or

2

privacy interest in the hidden compartment where the firearms were discovered.

**B. Factual Summary**

On the late afternoon of June 9, 2008, Detective Sergeant Aubrey Lyda was sitting at a gas station on Chamblee Tucker Road just off of Interstate 85 near Atlanta when he saw Defendant go by him in a black Nissan Altima, seated in the passenger seat.   T. 8. He recognized Defendant from several previous encounters with him at the club where he worked as an off duty security officer.  T. 5, 25. He knew Defendant to be an MS-13 gang member and he also knew that there was an outstanding warrant for his arrest from Gwinnett County.  T. 5-7, 26,28.  Detective Lyda put out an alert over the radio "that there was a guy who was wanted traveling on Chamblee Tucker Road" in a black Nissan Altima.  T. 11.  Two marked cars were nearby, one driven by Detective William Miguel and the other by Officer Marco Vizcarrondo.  T. 10-12.

Detective Miguel, after receiving the dispatch from Lyda, moved out to pursue the black Nissan Altima. He quickly caught up with the Altima and observed it run the red light at Shallowford Road and Chamblee Tucker Road.  T.42.  Detective Miguel testified that he observed that the light had changed to red when the Nissan was under it.  T. 50.  Detective Miguel also testified that in his view "if your vehicle, any part of your vehicle, is inside that, the

3

intersection, while the light is red, it's a violation." T.53. Based upon this violation, Detective Miguel made the stop and pulled the black Nissan over into a parking lot just on the other side of the intersection. He then approached the vehicle and asked for ID from the driver. Officer Lyda arrived within a couple of minutes and took over the investigation.

When Detective Miguel pulled out in pursuit of the Nissan, Officer Marco Vizcarrondo was also nearby and fell in behind Detective Miguel in the pursuit. T.57. Vizcarrondo was behind Detective Miguel when Miguel activated his lights and pulled the Nissan over. T. 58. Officer Vizcarrondo followed Detective Miguel and pulled into the parking lot behind him. T. 60. He then exited his vehicle and assisted Detective Miguel with the stop until Detective Lyda showed up and took over the investigation. T. 60-61.

Officer Vizcarrondo testified that he saw the vehicle run the light. T. 58. From his perspective, he saw that the light had "just turned yellow and the vehicle was proceeding into the intersection." T. 58. He elaborated that "the light just turned yellow and the vehicle proceeded instead of stopping. It turned yellow and the vehicle continued." T. 59.

When Detective Lyda arrived and took over the investigation a few minutes after the stop, he first positively identified the passenger as the person wanted under the warrant. T. 15. He

testified that he also noticed the smell of fresh marijuana coming from the car. He then secured Defendant by patting him down and handing him off to Officer Vizcarrondo, who placed him in a patrol car. T. 15. At some point, he verified the warrant by calling through radio dispatch. T.15. He then interviewed the driver, Gerson Romero, who admitted there was marijuana in the car and verbally consented to a search of the vehicle. T. 16, 32. See also Gov. Exh. 5, Transcript, January 29, 2010, Motion to Suppress Hearing in United States v. Ernesto Wilfredo Escobar, 1:09-CR-472 (N.D. Ga.) at 85-86, 87, 88 [Doc. 20]. A search of the vehicle revealed a small amount of marijuana and two guns in a compartment near the console. T. 18-19. Defendant Escobar and the driver Romero were both arrested and taken in. T.19.

### C. Discussion and Analysis

#### 1. Standing

A party has standing to challenge a search on Fourth Amendment grounds if he can demonstrate that he has a legitimate expectation of privacy in the searched area. Rakas v. Illinois, 439 U.S. 128, 143-44, 99 S.Ct. 421, 430-31, 58 L.Ed.2d 387 (1978). Defendant argues that he has standing to challenge the initial stop of the vehicle under Brendlin v. California, 551 US 249, 263 (2007), because the stop constituted a seizure of his person. In response, the government concedes that Defendant, as a passenger, was seized

5

for Fourth Amendment purposes and so may challenge the *stop's* constitutionality.   <u>See</u> Gov't. Br. at 10.   While making this concession, the government submits that Defendant nonetheless lacked any possessory interest in the vehicle, and thus lacked any legitimate expectation of privacy in the interior of the automobile sufficient to give him standing to challenge the seizure of the guns.   The government cites <u>United States v. Lee</u>, 586 F.3d 859, 864 (11th Cir. 2009), which in turn relied upon <u>United States v. Harris</u>, 526 F.3d 1334, 1338 (11th Cir. 2008), and <u>Rakas v. Illinois</u>, 439 U.S. 128, 140, 143 n.12 (1978).

Under <u>Brendlin</u>, Defendant has standing to challenge the stop because he was seized "from the moment [Romero's] car came to a halt on the side of the road. . . . ."   551 U.S. 263.   <u>Brendlin</u> did not, however, overrule <u>Rakas</u>.   551 U.S. at 253.   Under <u>Rakas</u>, a passenger without a property or possessory interest in the vehicle has no legitimate expectation of privacy in the vehicle and, therefore, no standing to challenge a search of the vehicle.   439 U.S. 148-49. Thus, although defendant has standing to challenge the stop under <u>Brendlin</u>, if the stop was valid, then Defendant would not have standing to challenge the subsequent search of the interior of the vehicle that led to the seizure of the two pistols.

## 2. The Validity of the Stop

Although the government at the hearing presented testimony that the officers who made the stop based their stop on a traffic violation, namely, running a red light, the government does not in its response rely on the traffic violation to justify the stop. Rather, the government argues that the stop was authorized based on the outstanding arrest warrant from Gwinnett County. The evidence showed that Detective Sergeant Lyda was aware of an outstanding warrant from Gwinnett County for Defendant's arrest on a charge of giving a false name to a law enforcement officer; that he recognized Defendant as he drove by; and that he directed the officers to pull the vehicle over in order to arrest Defendant. T. 5, 6-7, 10-11, 40.

In reply, Defendant suggests that an arrest on a misdemeanor charge without the arrest warrant in hand may be unlawful in Georgia, but provides no definitive authority for this proposition. See Def. Reply Brief at 3. Defendant also argues that Lyda did not have trustworthy information that the arrest warrant existed. Defendant also argues in one paragraph that the underlying arrest warrant was not a lawful warrant, attacking the sufficiency of the affidavit supporting it. Def. Reply Brief at 4.

The testimony from Lyda was that he knew Defendant, having encountered him on three or more occasions and photographed him as

7

a putative gang member. T. 6, 25. Lyda testified that he had talked to Detective Eric Osterberg of Gwinnett County, who swore out the warrant, and also Agent Jason Tyler of ICE, who knew about the charge, about the warrant before the day in question. T. 5-6. Detective Lyda thus had trustworthy information that there was a warrant. The government also placed a copy of the warrant in evidence. See Gov. Exh. 2. A review of the arrest warrant does not reveal any basis for a finding of facial invalidity or lack of probable cause.

Under these circumstances, it would appear that the stop of the black Nissan Altima was based on Detective Lyda's probable cause to believe that Defendant was a passenger in the vehicle and that Defendant had committed an arrestable offense, namely, the charge set forth in the outstanding warrant. Assuming that it was not necessary for the arresting officer to have the warrant actually in hand, then stopping the vehicle to arrest him on the warrant would be justified under the Fourth Amendment.

However, Defendant has raised an issue in his reply brief, however obliquely, as to whether an officer could legally arrest Defendant on a misdemeanor charge without having the warrant in hand. Defendant provided no definitive authority on this point under Georgia or federal law, but the Court has found Croker v. State, 114

Ga. App. 492 (1966), a case in which the Georgia Court of Appeals stated as follows:

> Where the offense is a misdemeanor not committed in the presence of the arresting officer, and where flight is not involved, no arrest may be made without a warrant, and the mere fact that a warrant exists but is not accessible at the time of the arrest will not justify the arrest.

Id. at 494 (internal citations omitted).

And in a case similar to this one arising from a district court in Alabama, United States v. Robinson, 650 F.2d 537, 539 (5th Cir. 1981),[1] the circuit court held that Alabama law required an arresting officer to have in his possession the warrant for a misdemeanor arrest.   As a result, the court in Robinson concluded that appellant's arrest was in violation of state law and that all evidence obtained as a result of such arrest should have been suppressed.   Id.   In that case, appellant was being observed by officers seated in an automobile and was recognized as having an outstanding warrant for his arrest for failure to appear on a shoplifting charge.   Neither officer had a copy of the warrant, nor had any offense been committed in their presence before they blocked the vehicle in to make the arrest.   Id. at 538.

---

[1]   Decisions of the Fifth Circuit rendered before October 1, 1981, are binding upon panels of the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

9

Robinson was called into doubt by the Fifth Circuit in Fields v. City of Houston, 922 F.2d 1183, 1190 n.7 (5th Circuit 1991), which observed that "[t]he United States Constitution does not require a warrant for misdemeanors not occurring in the presence of the arresting officer." Id. at 1189.  The Court there found that the officer had probable cause to arrest under the Fourth Amendment and therefore no cause of action for violation of Plaintiff's constitutional rights arose from the subject arrest.  Id.  Robinson was later distinguished in United States v. Eastland, 989 F.2d 760 (5th Cir. 1993), on the basis that the decision would only have any remaining validity on a non-constitutional basis, the Court making clear that federal law, rather than state, controls in determining the reach of the Fourth Amendment.  Id. at 766.

And indeed, the Eleventh Circuit seems to have put the issue to bed in an unpublished opinion in U.S. v. Bembry, 321 Fed. Appx. 892, 894 (11th Cir. 2009).  In that case, the Defendant sought to suppress evidence found in his hotel room on the grounds that, under Georgia law, an arrest warrant must be physically nearby when an officer arrests the subject of the warrant.  He contended that the validity of the warrant was controlled by state law.  The Court rejected Defendant's position, stating that "[t]he admissibility in federal court of the products of state searches and seizures is controlled by federal law." Id. (internal citations omitted).  The

10

Court went further to hold that "[t]here is no federal requirement that an officer have a warrant in hand or nearby when he is arresting a suspect" and found that, because the officer arrested Defendant pursuant to a valid arrest warrant, he did not violate federal law when he did not have the warrant in hand or nearby. Id.

Upon consideration of all this authority (dredged up by the Court, by the way, and not provided by the parties), the undersigned concludes that the fact that Georgia law may have required that an officer have a misdemeanor warrant "in hand" to effectuate a valid misdemeanor arrest would not control the outcome here. Thus, for purposes of this motion to suppress evidence under the Fourth Amendment, it is sufficient that the officers were aware of the warrant and that the warrant was valid and sufficient to provide probable cause for the arrest. Id. As these conditions are met here, the undersigned concludes that the stop of the black Nissan for the purpose of arresting Defendant was constitutionally valid under the Fourth Amendment.[2]

### D. Conclusion

For the foregoing reasons, the Court concludes that the stop of the vehicle was valid based upon the identification of Defendant in the car and the officer's knowledge of the outstanding warrant.

---

[2]    It is not necessary or required that the Court analyze whether the stop could be justified based on a traffic violation.

Because Defendant has no standing to challenge the search of the vehicle that occurred after the valid stop, the motion to suppress should be **DENIED**.

### III.
### Conclusion

To summarize, **IT IS RECOMMENDED** that Defendant's motion to suppress statements, [Doc. 358], be **DENIED** as **ABANDONED**, and that Defendant's motion to suppress evidence, [Doc. 359], be **DENIED**.

**SO REPORTED AND RECOMMENDED**, this 11th day of July, 2011.

_s/ E. Clayton Scofield_
E. CLAYTON SCOFIELD III
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)